# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHA-POPPIN GOURMET POPCORN LLC,
an Illinois limited liability company,
individually and on behalf of all others
similarly situated,

        *Plaintiff*,

    *v.*

JPMORGAN CHASE BANK, N.A., an Ohio
corporation, and

RCSH OPERATIONS, LLC, Louisiana
limited liability company, RCSH
OPERATIONS, INC., a California corporation
(together d/b/a Ruth's Chris Steak House), and
PHUNWARE, INC., a Delaware corporation,
individually and on behalf of all others
similarly situated,

        *Defendants.*

Case No. 1:20-cv-02523

Honorable Joan B. Gottschall

## PLAINTIFF'S RESPONSE IN OPPOSITION TO PHUNWARE, INC.'S
## <u>MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.      THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE ...... 5

II.     THE COURT HAS PERSONAL JURISDICTION OVER PHUNWARE ................. 6

III.    PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT ........................... 10

        A.  Illinois Recognizes Claims for Unjust Enrichment .......................................... 11

        B.  The Complaint Adequately Alleges Phunware's Unjust Enrichment at
            Plaintiff's Detriment ........................................................................................... 13

CONCLUSION ................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Supreme Court Cases**

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................... 10

*Calder v. Jones*,
  465 U.S. 783 (1984) ..................................................................................................... 8

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................. *passim*

*World-Wide Volkswagen Corp v. Woodson*,
  444 U.S. 286 (1980) ................................................................................................... 10

**Appellate Court Cases**

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*,
  817 F.3d 755 (Fed. Cir. 2016) ................................................................................ 8, 10

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ...................................................................................... 7

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) .................................................................................... 13

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) .................................................................................... 9

*Cleary v. Philip Morris*,
  656 F.3d 511 (7th Cir. 2011) ............................................................................... 14, 15

*Curry v. Revolution Labs., LLC*,
  949 F.3d 385 (7th Cir. 2020) .................................................................................. 6, 7

*Erie Ins. Exchange v. Erie Indem. Co.*,
  722 F.3d 154 (3d Cir. 2013) ..................................................................................... 5, 6

*Ferrell v. Express Check Advance of SC LLC*,
  591 F.3d 698 (4th Cir. 2010) ...................................................................................... 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...................................................................................... 6

*Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*,
  781 F.3d 1233 (10th Cir. 2015) .................................................................................. 6

*uBID, Inc. v. GoDaddy Grp.*,
    623 F.3d 421 (7th Cir. 2010) ........................................................................... 7, 8

**District Court Cases**

*Bond v. Veolia Water Indianapolis, LLC*,
    571 F. Supp. 2d 905 (S.D. Ind. 2008) ................................................................. 5

*Bruger v. Olero, Inc.*,
    434 F. Supp. 3d 647 (N.D. Ill. 2020) ................................................................. 12

*Govino, LLC v. WhitePoles LLC*,
    No. 416CV06981JSWKAW, 2017 WL 6442187 (N.D. Cal. Nov. 3, 2017) ....................... 9

*Greene v. Mizuho Bank, Ltd.*,
    169 F. Supp. 3d 855 (N.D. Ill. 2016) ......................................................... 8, 9, 10

*In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*,
    393 F. Supp. 3d 745 (N.D. Ill. 2019) ................................................................. 15

*Jett v. Warrantech Corp.*,
    436 F. Supp. 3d 1170 (S.D. Ill. 2020) ............................................................... 12

*Monster Energy Co. v. Wensheng*,
    136 F. Supp. 3d 897 (N.D. Ill. 2015) ................................................................... 8

*Mullen v. GLV, Inc.*,
    444 F. Supp. 3d 883 (N.D. Ill. 2020) ................................................................. 12

*O'Connor v. Ford Motor Co.*,
    No. 19-CV-5045, 2020 WL 4569699 (N.D. Ill. Aug. 7, 2020) ................................. 12

*Payton v. Kale Realty*,
    No. 13C 8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014) ..................................... 8

*Red.com, Inc. v. Jinni Tech Ltd.*,
    No. SACV 17-00382-CJC (KESx), 2017 WL 4877414 (C.D. Cal. Oct. 11, 2017) ............ 9

*Santiago v. City of Chicago*,
    446 F. Supp. 3d 348 (N.D. Ill. 2020) ................................................................. 12

*T.S. v. Twentieth Century Fox Television*,
    334 F.R.D. 518 (N.D. Ill. 2020) ....................................................................... 12

**State Court Cases**

*Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*,
398 Ill. App. 3d 773 (1st Dist. 2009) .................................................................14

*Bd. Of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Imp. Ass'n*,
404 Ill. App. 3d 184 (2d Dist. 2010) ..................................................................11

*Gagnon v. Schickel*,
2012 IL App (1st) 120645 .................................................................................12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill. 2d 145 (1989) ..................................................................................11, 12

*Lozada v. Advocate Health & Hosps. Corp.*,
2018 IL App (1st) 180320-U .............................................................................11

*M.J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.*,
78 Ill. App. 3d 725 (1st Dist. 1979).....................................................................11

*Raintree Homes, Inc. v. Village of Long Grove*,
209 Ill.2d 248 (2004) ........................................................................................11

*Vill. Of Bensenville v. City of Chicago*,
389 Ill. App. 3d 446 (2d Dist. 2009) ...................................................................11

**Other Authorities**

28 U.S.C. § 1332 ...........................................................................................5, 6

85 Fed. Reg. 20812.............................................................................................3

735 ILCS 5/2-209 ..............................................................................................7

Emily Flitter & Stacy Cowley, *Banks Gave Richest Clients 'Concierge Treatment' for Pandemic Aid*, N.Y. TIMES,
https://www.nytimes.com/2020/04/22/business/sba-loans-ppp-coronavirus.html..............4

https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf .......................3

Stephen Gandel & Graham Kates, *Phunware, a data firm for Trump campaign, got millions in coronavirus small business help*,
CBS NEWS https://www.cbsnews.com/amp/news/phunware-data-collection-trump-campaign-coronavirus-small-business-loans/...................................................................4

S. REP. 109-14, 45-46 .......................................................................................6

<u>**INTRODUCTION**</u>

This case is about well-moneyed and -connected entities who, as the COVID-19 pandemic unfolded across the country in early 2020, performed an end-run around federally mandated procedures to obtain millions of dollars in crisis-related funding, all at the expense of struggling small businesses. Defendant Phunware, Inc. ("Phunware" or "Defendant") was guided in this end-run by JPMorgan Chase Bank, N.A. ("Chase"), who gave it white-glove treatment in applying for loans under the federal Paycheck Protection Program ("PPP"). Plaintiff Sha-Poppin Gourmet Popcorn, LLC ("Sha-Poppin" or "Plaintiff") was not so well-connected and had to— along with thousands of other small businesses—play by the rules in hopes of keeping its business afloat. But Plaintiff was penalized for doing so, and ultimately received a PPP loan one-fourth of the size it sought, while Defendant cut the line and got a much bigger (and faster) loan through Chase. As such, Plaintiff brought this putative class action lawsuit to vindicate its rights and reverse Defendant's unjust enrichment of its own business at Plaintiff's and others' expense.

In moving to dismiss, Phunware raises jurisdictional and substantive arguments, but each claimed basis for dismissal fails. Phunware first argues that the Court lacks subject matter jurisdiction because the Complaint fails to allege the citizenship of members of Sha-Poppin's LLC. The argument is a non-starter. The Class Action Fairness Act ("CAFA") treats unincorporated associations—LLCs included—like corporations for the purposes of diversity jurisdiction. The citizenship of a LLC's members has no jurisdictional relevance in CAFA cases.

Phunware next says that this Court lacks specific personal jurisdiction over it. This is wrong. By agreeing to work with Chase—a massive banking entity with nationwide reach—to wrongfully submit Phunware's PPP loan application ahead of others, Phunware knew that it would draw down the pot of available PPP funds made available for small businesses

everywhere Chase does business, including Illinois. As a result, Phunware knew that its decision would cause harm to businesses across the country, which is sufficient to establish specific personal jurisdiction here.

Last, Phunware attacks the merits of Plaintiff's unjust enrichment claim on two grounds, but neither have merit. First, it suggests that unjust enrichment isn't recognized as a claim in Illinois. But it is, and has clearly defined elements that Plaintiff's pleading satisfies by connecting Phunware's enrichment to Chase's unlawful flouting of PPP regulations. Second, Phunware says that Plaintiff fails to allege a connection between Phunware's enrichment and any detriment suffered by Plaintiff. This just ignores the Complaint altogether; by necessity, Phunware's election to accept undeserved funds prevented Plaintiff—and other small businesses—from even applying for PPP loans.

For these reasons, Phunware's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

On March 11, 2020, the COVID-19 outbreak was designated as a pandemic by the World Health Organization. Governors across the nation began to announce "stay at home" orders that—while necessary to contain the pandemic—wreaked havoc on business communities across the country. (Dkt. 1, ¶¶ 21-22.) That fallout was immediate, particularly for small businesses in "stay at home" order states, who were forced to overhaul their business models, scale back dramatically, or close for good. (*Id.*, ¶ 23.)

The federal government responded by passing the CARES Act on March 27, 2020. This bill contained a $349 billion loan program—the "PPP"—for "small" businesses with fewer than 500 employees. The PPP's goal was to give small businesses eight weeks of funds to help cover payroll and other costs through fully federally guaranteed loans (which, in practice, operated like

grants) administered by the Small Business Administration ("SBA").[1] (*Id.*, ¶¶ 24-28.)

The window for businesses to apply for PPP loans through SBA-approved lenders opened on April 3, 2020. Among other requirements (such as, for example, limiting business applicants to only one loan each[2]), the SBA mandated that applications were to be processed on a "first-come, first-served" basis.[3] Because the PPP was administered *only* through SBA-approved lenders, and because applicants could *only* access funds specifically allocated for the program, the lenders had a legal—and moral—duty to ensure that applications were fairly processed.[4] (*Id.*)

Chase, one of the nation's largest banks, is a SBA-approved lender. (*Id.*, ¶¶ 32-33.) Chase knew it would get tens of thousands of requests the minute the window opened for PPP applications. (*Id.*, ¶ 35.) It also knew that many of these requests would be for relatively small amounts of money (*i.e.*, less than $50,000), but that the $349 billion allocated for the PPP would run dry before all applications could be processed. (*Id.*) Critically, Chase knew that many of its larger or well-connected customers—like Phunware—would also want PPP money, but would not want to compete with the general public. (*Id.*)

For these customers, Chase dispensed with the "first-come, first-served" requirement. Instead, it prioritized the applications of favored customers over those of smaller clients. (*Id.*, ¶ 36.) Chase's favoritism did not escape notice. As the *New York Times* reported:

> At Chase, the nation's largest bank, nearly all private and commercial banking clients who applied for a small-business loan got one, whereas only one out of every 15 retail banking customers who sought loans was successful. ... The two-tiered system paid off for well-to-do customers: By the time the [PPP] ran out of money

---

[1]     85 Fed. Reg. 20812 § e; *id.* at 20813 § (2)(o).

[2]     *Id.* at 20813 § (2)(k).

[3]     *Id.* at 20813 § (2)(m).

[4]     85 Fed. Reg. 20815 § (3)(a) ("Who is eligible to make PPP loans?", then listing the categories of lender eligible to make PPP loans).

... many top clients of national and regional banks … had their loans approved.[5] Indeed, many small business owners that tried to apply for PPP loans through Chase could not even submit applications and were expressly told not to contact the bank for help. (Dkt. 1, ¶¶ 38, 60.) The result was to be expected: "At [Chase], nearly all of the 8,500 commercial and private banking clients who applied for a loan got one. … At the same time, only 18,000 of more than 300,000 small-business banking customers who applied … got loans." (*Id.*, ¶ 39.)

Defendant Phunware—an entity with connections to the Trump administration and a former Chase executive on its board—was on Chase's shortlist and, similar to the rest of the bank's preferred clients, received a nearly $3 million PPP loan, even though it applied for funds *days* after the application process opened. (*Id.*, ¶ 47.)[6]

Plaintiff Sha-Poppin's experience reflects the flipside of Phunware's concierge treatment. The five-employee company was faced with massive financial strain following Governor J.B. Pritzker's March 10, 2020 disaster proclamation. (*Id.*, ¶¶ 55-59.) When the PPP application window opened on April 3, 2020, Sha-Poppin's manager, Stacy Hawkins-Armstrong, immediately attempted to submit an application for a $25,000 loan through Chase. But Chase's website returned an error messages each time she attempted to submit her application, with instructions indicating that she should *not* call customer service for help. (*Id.*, ¶ 60.) For days after, Hawkins-Armstrong attempted to submit Sha-Poppin's PPP loan application, and for days it would not work. (*Id.*, ¶ 61.)

---

[5]     Emily Flitter & Stacy Cowley, *Banks Gave Richest Clients 'Concierge Treatment' for Pandemic Aid*, N.Y. TIMES, https://www.nytimes.com/2020/04/22/business/sba-loans-ppp-coronavirus.html (Apr. 22, 2020).

[6]     Stephen Gandel & Graham Kates, *Phunware, a data firm for Trump campaign, got millions in coronavirus small business help*, CBS NEWS https://www.cbsnews.com/amp/news/phunware-data-collection-trump-campaign-coronavirus-small-business-loans/ (Apr. 23, 2020).

Chase eventually told Hawkins-Armstrong that it was too late to apply. Before the deadline to submit PPP loan applications had even expired, Chase suggested that she take her business elsewhere. Desperate for help, Hawkins-Armstrong turned to the small bank Seaway, where she was only able to obtain and accept a small $6,000 loan, which provided marginal assistance but prevented her from seeking the funds for which—but for the conduct of Chase, Phunware, and Defendant Class members—she would have been eligible. (*Id.*, ¶¶ 63-65.)

## ARGUMENT

## I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE.

Phunware first says the Court lacks subject matter jurisdiction because Plaintiff does not identify the citizenship of its constituent members. Phunware, however, ignores the requirements for alleging the citizenship of unincorporated associations, such as LLCs, in CAFA cases like this one. Its argument fails as a result.

Jurisdiction under CAFA requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). But while the citizenship of a LLC's members matters in most diversity cases, under CAFA it does not. The statute makes this overt: 28 U.S.C. § 1332(d)(10) provides that, for purposes of diversity jurisdiction in CAFA cases, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Under CAFA, LLCs are treated like corporations for purposes of determining citizenship. *See Bond v. Veolia Water Indianapolis, LLC*, 571 F. Supp. 2d 905, 909 (S.D. Ind. 2008) ("The court concludes that § 1332(d)(10) applies to [the defendant LLC], so that its citizenship must be determined as if it were a corporation, making it a citizen of the state under whose laws it is organized and of the state where its principal place of business is located."); *Erie Ins. Exchange v. Erie Indem. Co.*,

722 F.3d 154, 161 (3d Cir. 2013) (all companies are treated like corporations under CAFA); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010) (LLCs treated like corporations for CAFA diversity jurisdiction purposes); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015) (same). *See also* S. REP. 109-14, 45-46 (Describing purposes of "[n]ew subsection 1332(d)(10)" as "ensur[ing] that unincorporated associations receive the same treatment as corporations for purposes of diversity jurisdiction.").[7]

Here, the Complaint provides the required allegations of each party's citizenship under CAFA. For its own citizenship, Plaintiff alleges its own state of organization and principal place of business. (Dkt. 1, ¶ 12.) It does the same for Defendant Phunware. (*Id.*, ¶ 16.) Because Plaintiff is a citizen of Illinois under CAFA, which is different from the citizenship of defendants, the Court's diversity jurisdiction is secured. 28 U.S.C. §§ 1332(d)(2), (10).

## II.     THE COURT HAS PERSONAL JURISDICTION OVER PHUNWARE.

Next, Phunware argues personal jurisdiction is lacking because it has no suit-related contacts to Illinois. But Phunware ignores that a court may exercise specific personal jurisdiction over a non-resident party that purposefully engages in conduct knowing that it will cause harm in all fifty states—as happened here. The Court has personal jurisdiction over Phunware as a result.

On a Rule 12(b)(2) motion to dismiss, the Court must "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020). The plaintiff need not plead facts alleging personal jurisdiction, but ultimately "plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where a court rules on a motion to dismiss "without the benefit of an evidentiary hearing,[] plaintiff bears only

---

[7]     Plaintiff recognizes that some district courts have erroneously failed to apply 28 U.S.C. 1332(d)(10) in CAFA cases. But that error does cannot negate the plain text and intent of the statute.

the burden of making a prima facie case for personal jurisdiction." *Curry*, 949 F.3d at 392-393.

Illinois's long-arm statute allows this Court to exercise personal jurisdiction to the full extent the U.S. Constitution's due process clause allows. 735 ILCS 5/2-209(c). Due process requires that a plaintiff show that defendant has "minimum contacts" with the forum. *Curry*, 949 F.3d at 395. The Court may exercise specific jurisdiction over claims arising out of defendant's contacts with the forum. *Id.* For the claim at issue here, specific jurisdiction requires that the defendant "purposefully direct [its] activities" at the state. *Id.* at 398.[8] Purposeful direction requires (i) intentional conduct, (ii) aimed at the forum state, (iii) causing harm defendant knows will likely occur in the forum. In assessing specific jurisdiction, "relevant contacts" are "the defendant's suit-related conduct," which "must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284). Whether the exercise of specific jurisdiction comports with due process turns on case-specific facts and the nature of the claim raised. *See uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 433 (7th Cir. 2010) ("[T]his is a field of law where the Supreme Court has repeatedly refused opportunities to draw ... bright lines.").

Each element of the test is satisfied here. For the first, intentional conduct, there is no dispute that Phunware knowingly and intentionally applied for a PPP loan through Chase. (Dkt. 1, ¶ 47.) Moreover, Phunware understood that the process by which its application was submitted occurred outside of the ordinary course of business required under SBA regulations—*i.e.,* not on a "first-come, first-served" basis. (*Id.*, ¶¶ 47, 48, 120.)

As to the second and third requirements—*i.e.*, (ii) that Phunware's conduct was aimed at

---

[8]    Phunware does not argue that exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The argument is waived.

Illinois, and (iii) it acted knowing that harm would be suffered in Illinois—these elements are collectively satisfied through allegations that, for the type of claim alleged here, a defendant knew its conduct would cause injury in the forum state, and harmed the plaintiff through forum-connected conduct. *Walden*, 571 U.S. at 287-88 (discussing *Calder v. Jones*, 465 U.S. 783 (1984), noting that nature of reputation-based effects of libel justified specific jurisdiction over out-of-state article publisher who knowingly caused reputational injury in California). Here, Sha-Poppin alleges that Phunware was unjustly enriched at Plaintiff's expense, as part of its knowing efforts to cut in line and get a large PPP loan before other qualified applicants could apply or receive funds. (Dkt. 1, ¶¶ 47, 48, 55-59, 120.) This was done in concert with Chase to obtain a PPP loan on something other than a "first-come, first-served" basis. (*Id.* ¶¶ 47-48.) Given Chase's status as one of the largest national banks in the country, (*id.*, ¶ 35), every putative Defendant Class member in Phunware's position knew that by moving its own application ahead in the queue, it was necessarily pushing back the applications of—and limiting the funds available to—businesses from every other state, including those in Illinois. These allegations are enough to show that Phunware's intentional conduct was directed at Illinois, among other states. *See, e.g.*, *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 759-60 (Fed. Cir. 2016) (fact drug marketing also be directed at other states does not defeat jurisdiction in forum state); *Payton v. Kale Realty*, No. 13C 8002, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (fact defendants aimed tortious products to residents in all fifty states did not render subsequent sales to Illinois residents to be fortuitous contacts); *uBID, Inc.*, 623 F.3d at 433 (jurisdiction where the defendant directed "business activities toward [the forum] just as" they had "toward all other states"); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) ("expressly elect[ing] to do business with the residents of all fifty states, including Illinois" supports personal

jurisdiction in Illinois"); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 861 (N.D. Ill. 2016) (jurisdiction found even though fraudulent concealment plan executed on different continent).

For these reasons, Phunware—along with every other member of the putative Defendant Class—knew, or reasonably should have known, that its tortious conduct would be felt where Sha-Poppin and other putative PPP loan applicants resided, moving them back in line accordingly. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (harm element satisfied when "defendant's intentional act has 'foreseeable effects' in the forum"); *see also Govino, LLC v. WhitePoles LLC*, No. 416CV06981JSWKAW, 2017 WL 6442187, at *3 (N.D. Cal. Nov. 3, 2017), *report and recommendation adopted*, No. 16-CV-06981-JSW, 2017 WL 6442188 (N.D. Cal. Dec. 11, 2017) (express aiming occurred where Wyoming company advertised patent-infringing products of California company outside of California). Again, given Chase's status and reach, there is no need for Phunware to have been specifically aware of which other businesses were also applying for PPP loans, and were—by virtue of its own line-cutting—being harmed by Phunware's conduct. *Walden*, 571 U.S. at 285-86; *Red.com, Inc. v. Jinni Tech Ltd.*, No. SACV 17-00382-CJC (KESx), 2017 WL 4877414, at *4 (C.D. Cal. Oct. 11, 2017) (jurisdiction where defendant either knew of plaintiff's residency or was "willfully blind to it").

For its part, Phunware notes that a plaintiff's residency alone generally cannot create personal jurisdiction over a defendant, and that it did not submit its PPP application to or from Illinois specifically. (Dkt. 26, at 9.) All this is true, but Phunware fails to appreciate that the nature of the claim at issue here connects its out-of-state conduct to the forum. *See Walden*, 571 U.S. at 285-86. As described above, Phunware and other unnamed defendants knew or should have known that the unfair prioritization of their own PPP applications—regardless of where

those applications were submitted from—would have consequences for other PPP loan applicants in every state, including Illinois. Mapped onto the unjust enrichment claim at issue here, which addresses a benefit unjustly received by one party at another's expense, Phunware's prioritized receipt of a large PPP loan was necessarily done at the expense of businesses from Illinois and other states. That is enough to show Phunware's knowledge of its actions' effects in Illinois. (Dkt. 1, ¶¶ 47, 48, 55-59, 120.) *See Acorda Therapeutics Inc.*, 817 F.3d at 759-60 (personal jurisdiction given nature of copyright infringement action despite lack of relevant in-state contacts); *Greene,* 169 F. Supp. 3d at 861 (jurisdiction found though concealment plan executed on different continent).

In sum, Phunware's willing participation in Chase's plan to prioritize its favored customers' PPP loan applications (over the applications of businesses from other states) demonstrates that it acted with states like Illinois in mind, making its forum-related contacts far from "random, fortuitous, or attenuated." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). Because Phunware's contact with Illinois was necessarily "intertwined with [its] transactions or interactions" and efforts to cut the line in obtaining a PPP loan, *Walden*, 571 U.S. at 286, and was not dependent wholly on activities out of its control, *see World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 291-92 (1980), the Court has personal jurisdiction over Phunware.

## III.    PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT.

Phunware also attacks the substance of the Complaint, but its arguments lack merit. Initially, Phunware says that unjust enrichment is not a standalone cause of action in Illinois. (Dkt. 26, at 10.) But Illinois *does* allow claims for unjust enrichment under circumstances present here, where Plaintiff's recovery is tied to the allegations levied against Chase. Phunware alternatively contends that the Complaint does not adequately allege facts to support a claim for

unjust enrichment because there is no connection between Phunware's inappropriate conduct and Sha-Poppin's harm. (*Id.* at 11.) This, too, is incorrect; the Complaint alleges a direct connection between Phunware's line-cutting and Sha-Poppin's inability to obtain a PPP loan from Chase.

### A. Illinois Recognizes Claims for Unjust Enrichment.

To begin, Phunware generally suggests that Illinois does not recognize claims for unjust enrichment. This is incorrect. Under Illinois law, unjust enrichment claims are permitted under the circumstances in this case, where a plaintiff alleges unlawful conduct that causes another's unjust enrichment.

To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). *Accord Lozada v. Advocate Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, ¶ 35 (upholding unjust enrichment claim). Alleging a claim for unjust enrichment under Illinois law is not cumbersome—"[a]n action for unjust enrichment is maintainable in *all cases* where one person has received money under such circumstances that in equity and good conscience, he ought not retain it." *M.J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.*, 78 Ill. App. 3d 725, 730 (1st Dist. 1979). "Damages in an unjust-enrichment claim are restitution measured by the defendant's gain, not the plaintiff's loss." *Bd. Of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Imp. Ass'n*, 404 Ill. App. 3d 184, 193-94 (2d Dist. 2010) (citing *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill.2d 248, 257-58 (2004)). Unjust enrichment can arise where money is transferred to a third-party by another. *Vill. Of Bensenville v. City of Chicago*, 389 Ill. App. 3d 446, 492 (2d Dist. 2009) (quoting *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 161).

There has, no doubt, been some confusion about whether a plaintiff can plead a claim for unjust enrichment—and to be sure, "[u]njust enrichment is not an *independent* cause of action." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (emphasis added). But this does not mean that unjust enrichment cannot be brought as a claim *at all*, as demonstrated by the innumerable courts that have allowed unjust enrichment claims to survive past the pleading stage. Rather, a claim for unjust enrichment cannot proceed where it relies on allegations rejected as insufficient to support a different claim. *See, e.g.*, *O'Connor v. Ford Motor Co.*, No. 19-CV-5045, 2020 WL 4569699, at *9 (N.D. Ill. Aug. 7, 2020) ("[W]here the [unjust enrichment] claim rests on the same improper conduct alleged in another claim, it will stand or fall with the related claim.") (internal quotation omitted); *Santiago*, 446 F. Supp. 3d at 368 (same); *Mullen v. GLV, Inc*., 444 F. Supp. 3d 883, 901 (N.D. Ill. 2020) (same); *see also HPI Health Care Servs.*, 131 Ill. 2d at 160 (Illinois Supreme Court upholding unjust enrichment claim against entity where only claim solely against that entity was the enrichment claim).

Here, Plaintiff's unjust enrichment claim is tethered to the allegations and claims brought against Chase. Plaintiff alleges that Chase, by violating the "first-come, first-served" rule, operating a malfunctioning website during a peak PPP application period, and concealing its plan to provide concierge service to favored clients like Phunware, acted unlawfully and, in turn, committed various torts, in addition to violating the ICFA. (Dkt. 1, ¶¶ 84-110.) Phunware, in turn, was the direct beneficiary of this plan, which is why it received a $3 million PPP loan (because of its connection with Chase and despite its late loan application) while countless others, including Plaintiff, languished. Thus, the unjust enrichment claim against Phunware is explicitly tied to the other unlawful conduct alleged in the complaint (which also supports at least four separate claims against chase). It is not pleaded as an "independent" cause of action at

all, and therefore avoids the issues Phunware identifies.

The Seventh Circuit's decision in *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019)—cited by Phunware—supports this outcome. The plaintiff in *Benson* claimed a candy store sold boxes of chocolate containing less candy than they appeared to, and brought claims under the Illinois Consumer Fraud Act ("ICFA") and for unjust enrichment. *Id.* at 644. In addressing the unjust enrichment count, the court simply found that the claim was tied to the fate of the ICFA claim and plaintiff's ability to prove defendant's fraudulent conduct. *Id.* at 648. The court ultimately affirmed dismissal of the fraud count, and from there reasoned that there was no allegedly unlawful conduct to serve as an anchor for the unjust enrichment count— requiring its dismissal as well. *Id.* That is not the case here. At present, Plaintiff alleges facts to support claims of negligence, tortious interference with prospective economic advantage, fraudulent concealment, and an ICFA violation against Chase. Without a finding that Chase's activity was lawful, these predicate allegations are sufficient to anchor Plaintiff's unjust enrichment claim against Phunware.

**B.      Plaintiff Alleges Phunware's Unjust Enrichment at Its Detriment.**

Finally, Phunware argues the Complaint fails to state a claim for unjust enrichment by not alleging a connection between Phunware's enrichment and Sha-Poppin's harm. (Dkt. 26, at 11.) This contention fails, too. Plaintiff draws a straightforward connection between Phunware's line-cutting and Sha-Poppin's inability to obtain the maximum available PPP loan.

Indeed, the connection that Phunware claims is missing is pleaded directly. Plaintiff alleges Phunware and other putative Defendant Class members obtained multi-million-dollar benefits through Chase in the form of PPP loans. (Dkt. 1, ¶¶ 47, 76-83.) Defendants only—and knowingly—obtained these loans because Chase prioritized the applications of its higher-profile

and larger loan-seeking customers, contrary to the SBA's "first-come, first-served" command. (*Id.*, ¶ 120.) As a result of this line-cutting, there was less time and money available for non-preferred customers, like Sha-Poppin and other members of the Plaintiff class. In other words, Chase's conduct—and Phunware's willingness to go along with it—is *the* reason why the pool of money that should have been made available to small businesses like Plaintiff was untimely drained. (*Id.*, ¶ 50.) Had Chase accepted and submitted PPP applications as required, Plaintiff would have been able to apply and become eligible for the full amount of her loan before such amounts were earmarked for Chase's favored clients. (*Id.*, ¶¶ 68-69.) As discussed above, these allegations draw the required connection between Chase and Phunware's unlawful conduct, on the one hand, and the detriment suffered by Plaintiff, on the other. (*See supra* § III.A.)[9]

Phunware relies on two cases, but neither cuts in favor of dismissal. In the first case, *Cleary v. Philip Morris*, a class of Illinois cigarette purchasers sued a cigarette manufacturer, arguing that the manufacturer had been unjustly enriched through its failure to fully disclose the health risks of cigarette smoke. 656 F.3d 511, 518-19 (7th Cir. 2011). The Seventh Circuit disagreed. As the court recounted, the plaintiff's claim was grounded in the defendant's alleged failure to "disclose the full truth about [the nature and hazards] of cigarettes," but the unjust enrichment claim faltered because the plaintiffs made no effort to allege they suffered harm as a result of the defendant's failure (but, instead, relied on an amorphous "right" to know the truth).

---

[9]      Really, the principles and equities at issue here run far deeper given the specific circumstances. *Cf. Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 788 (1st Dist. 2009) (claim for unjust enrichment sufficiently pleaded, noting context that "defendants were insiders of the third party corporation that owed payment to" a third-party). Phunware essentially attempted to siphon millions of dollars from a small-business oriented federal program amidst an ever-evolving pandemic that wreaked havoc on the economy. Meanwhile, Sha-Poppin tried earnestly to play by the rules and get into the "line" Phunware cut. This violates fundamental fairness principles and good conscience to the fullest extent.

*Id.* at 518. Here, in contrast, Plaintiff alleges the connection missing from *Cleary*: Phunware's (and other defendant class members') enrichment came as a result of sidestepping the SBA's "first-come, first-served" requirement, which deprived Plaintiff and others the opportunity to receive PPP funding that otherwise would have been made available to them.

For similar reasons, *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation* is distinguishable. 393 F. Supp. 3d 745 (N.D. Ill. 2019) *appeal filed Ann Bell, et al. v. Albertson Cos., Inc., et al.*, No. 19-2741 (7th Cir. Sept. 23, 2020). In that case, the plaintiffs alleged defendants were unjustly enriched by selling products advertised as "100% Grated Parmesan Cheese" when, in fact, they sold a form of adulterated parmesan. *Id.* at 750. Relying on *Cleary*, the *100% Grated Parmesan* court repeated that a "consumer cannot make out an unjust enrichment claim merely by alleging that the defendant withheld information about a product's undesirable qualities." *Id.* at 764. In particular, the court relied on the fact that, at best, plaintiffs' claims affected the price paid by all consumers, which was insufficient to support an unjust enrichment claim. *Id.* at 764-65. Here, in contrast, Plaintiff does not allege that Phunware's and Chase's conduct affected all PPP loan applicants equally. The opposite is true: Defendants' conduct resulted in the pool of available PPP funds being drained prematurely, which had real, tangible consequences only for those loan applicants—like Sha-Poppin—whose loan applications were considered *after* (or not at all) as a result of Chase's favoritism.

In short, because Plaintiff alleges a "a detriment ... and, significantly, a connection between the detriment and [Phunware's] retention of [a related] benefit," it readily states a claim for unjust enrichment. *See Cleary*, 656 F.3d at 519.

## CONCLUSION

For the foregoing reasons, Phunware's Motion should be denied in full.

Respectfully submitted,

**SHA-POPPIN GOURMET POPCORN LLC**,
individually and on behalf of all others similarly
situated,

Dated: October 12, 2020          By: /s/ Benjamin H. Richman
                                         One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
Ari J Scharg
ascharg@edelson.com
Daniel J. Schneider
dschneider@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, hereby certify that on October 12, 2020 I served the above and foregoing document by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

/s/Benjamin H. Richman