# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SHA-POPPIN GOURMET POPCORN LLC, an Illinois limited liability company, individually and on behalf of all others similarly situated, | Case No. 20-cv-02523 |
| *Plaintiff*, | |
| *v.* | |
| JPMORGAN CHASE BANK, N.A., an Ohio corporation, and | |
| PHUNWARE, INC., a Delaware corporation, individually and on behalf of all others similarly situated, | |
| *Defendants.* | |
| AJIRA AI LLC, an Illinois limited liability company, individually and on behalf of all others similarly situated, | Case No. 20-cv-04428 |
| *Plaintiff*, | |
| *v.* | |
| JPMORGAN CHASE BANK, N.A., an Ohio corporation, and | |
| *Defendants.* | |

## PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO JPMORGAN CHASE BANK'S MOTION TO STAY FURTHER PROCEEDINGS AND COMPEL ARBITRATION

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

A.     Chase Has Not Demonstrated that Plaintiffs Agreed to the DSA ................................. 5

B.     The DAA's Reference to the JAMS or AAA Rules Does Not "Clearly and
       Unmistakably" Delegate Scope Issues to an Arbitrator ................................................ 7

C.     Plaintiffs' Claims Do Not Fall Under the Scope of the DAA's
       Arbitration Agreement ............................................................................................... 14

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..............................................................................6, 8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ....................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019).................................................................................8

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ...................................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................14

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................8, 9

**Appellate Court Cases**

*Awuah v. Coverall N. Am., Inc.*,
    554 F.3d 7 (1st Cir. 2009).........................................................................9

*Bazemore v. Jefferson Capital Sys., LLC*,
    827 F.3d 1325 (11th Cir. 2016) ................................................................7

*Campbell Soup Co. v. Wentz*,
    172 F.2d 80 (3d Cir.1948) ......................................................................10

*CK Witco Corp. v. Paper Allied Indus.*,
    272 F.3d 419 (7th Cir. 2001) ....................................................................8

*Duthie v. Matria Healthcare, Inc.*,
    540 F.3d 533 (7th Cir. 2008) ..................................................................14

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*,
    541 F.3d 719 (7th Cir. 2008) ..................................................................11

*Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*,
    374 F.3d 1 (1st Cir. 2004).......................................................................17

*Gore v. Alltel Commc'ns, LLC*,
   666 F.3d 1027 (7th Cir. 2012) ............................................................14, 15, 19

*JPay, Inc. v. Kobel*,
   904 F.3d 923 (11th Cir. 2018) ...........................................................................8

*Mason v. Midland Funding LLC*,
   815 F. App'x 320 (11th Cir. 2020).................................................................6, 7

*Rosenblum v. Travelbyus.com Ltd.*,
   299 F.3d 657 (7th Cir. 2002) .....................................................................*passim*

*Shriner v. Signal Fin. Co.*,
   92 F. App'x 322 (7th Cir. 2003) ......................................................................17

*Wachovia Bank, Nat. Ass'n v. Schmidt*,
   445 F.3d 762 (4th Cir. 2006) .....................................................................19, 20

*Wisconsin Local Gov't Prop. Ins. Fund v. Lexington Ins. Co.*,
   840 F.3d 411 (7th Cir. 2016) ...........................................................................14

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
   466 F.3d 577 (7th Cir. 2006) .............................................................................5

**District Court Cases**

*Allstate Ins. Co. v. Toll Bros., Inc.*,
   171 F. Supp. 3d 417 (E.D. Pa. 2016).........................................................10, 11

*Ashworth v. Five Guys Operations, LLC*,
   No. CV 3:16-06646, 2016 WL 7422679 (S.D.W. Va. Dec. 22, 2016) ..............9

*Chong v. 7-Eleven, Inc.*,
   No. CV 18-1542, 2019 WL 1003135 (E.D. Pa. Feb. 28, 2019) ..................10, 11

*Clements v. JPMorgan Chase Bank, N.A.*,
   No. 18 C 660 (N.D. Ill. Dec. 12, 2018) ...........................................................14

*Davis v. Fenton*,
   26 F. Supp. 3d 727 (N.D. Ill. 2014)..................................................................15

*Dill v. JPMorgan Chase Bank, N.A.*,
   No. 19 CIV. 10947 (KPF), 2020 WL 4345755 (S.D.N.Y. July 29, 2020).......14

*Doe v. Natt*,
   No. 2D19-1383, 2020 WL 1486926 (Fla. Dist. Ct. App. Mar. 25, 2020)............10, 12, 13

*Eiess v. USAA Fed. Sav. Bank*,
   404 F. Supp. 3d 1240 (N.D. Cal. 2019)...........................................................................11

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
   No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018) ..........................................6

*Huron Consulting Grp. Inc. v. Gruner*,
   No. 17 C 6042, 2018 WL 572709 (N.D. Ill. Jan. 24, 2018) .......................................15, 17

*Info. Sys. Audit and Control Ass'n v. TeleCommc'n Sys., Inc.*,
   No. 17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017) .............................................9

*Ingalls v. Spotify USA, Inc.*,
   No. C 16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016)............................11

*In re Little*,
   610 B.R. 558 (Bankr. D.S.C. 2020)..................................................................................11

*In re: Zetia (Ezetimibe) Antitrust Litig.*,
   No. 2:18MD2836, 2018 WL 4677830 (E.D. Va. Sept. 6, 2018) ......................................12

*Johnson v. JP Morgan Chase Bank, N.A.*,
   No. EDCV172477JGBSPX, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018)....................14

*Meadows v. Dickey's Barbecue Rests., Inc.*,
   144 F. Supp.3d 1069 (N.D. Cal. Nov. 12, 2015)..............................................................12

*Mecum v. Weilert Custom Homes, LLC*,
   239 F. Supp. 3d 1093 (N.D. Ill. 2017)................................................................................5

*Miracle-Pond v. Shutterfly, Inc.*,
   No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................................5

*Novak v. JP Morgan Chase Bank, NA*,
   No. 06-14862, 2008 WL 907380 (E.D. Mich. Mar. 31, 2008)..........................................14

*Nucap Indus., Inc. v. Robert Bosch LLC*,
   No. 15-CV-2207, 2015 WL 4038714 (N.D. Ill. July 1, 2015) .............................16, 18, 19

*O'Quinn v. Comcast Corp.*,
   No. 10 C 2491, 2010 WL 4932665 (N.D. Ill. Nov. 29, 2010).......................................6, 7

*Rensel v. Centra Tech, Inc.*,
   No. 17-24500-CIV, 2018 WL 4410110 (S.D. Fla. June 14, 2018) .....................................7

*Rui Chen v. Premier Fin. All., Inc.*,
    No. 18-CV-3771 YGR, 2019 WL 280944 (N.D. Cal. Jan. 22, 2019) ................................ 7

*Sanchez v. J.P. Morgan Chase Bank, N.A.*,
    No. 14-20468-CIV-MORENO, 2014 WL 4063046 (S.D. Fla. Aug. 15, 2014) ............... 14

*Scott v. JPMorgan Chase & Co.*,
    No. 13 CIV. 646 KPF, 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) ................................ 14

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ................................................................................5, 6, 10

*Sherman v. AT & T Inc.*,
    No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ............................................ 6

*Slaughter v. Nat'l R.R. Passenger Corp.*,
    No. 19-CV-2920 (APM), 2020 WL 2527193 (D.D.C. May 18, 2020) ............................ 17

*Snyder v. Wells Fargo Bank, N.A.*,
    No. 11 CIV. 4496 SAS, 2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011) ........................... 17

*Stone v. Wells Fargo Bank, N.A.*,
    361 F. Supp. 3d 539 (D. Md. 2019) ................................................................................ 11

*Sunmonu v. Chase Bank, N.A.*,
    No. CV GLR-18-1695, 2019 WL 1258788 (D. Md. Mar. 19, 2019) ............................... 14

**State Court Cases**

*Ajamian v. CantorCO2e, L.P.*,
    203 Cal. App. 4th 771, 790, 137 Cal. Rept. 3d 773, 789 (2012) ...................................... 13

*Bass v. SMG, Inc.*,
    328 Ill. App. 3d 492, 765 N.E.2d 1079 (1st Dist. 2002) .................................................. 15

*Flandreau Pub. Sch. Dist. No. 50-3 v. G.A. Johnson Const., Inc.*,
    2005 S.D. 87, 701 N.W.2d 430 ....................................................................................... 11

*Johnson-Linzy v. Conifer Care Communities A, LLC*,
    2020 COA 88, 469 P.3d 537.......................................................................................11, 13

*Salsitz v. Kreiss*,
    198 Ill.2d 1, 761 N.E.2d 724 (2001)................................................................................ 14

**Other Authorities**

AAA Rules, Forms, & Fees,
    https://www.adr.org/Rules.............................................................................................*passim*

JAMS ADR Rules, Clauses and Procedures,
    https://www.jamsadr.com/adr-rules-procedures/.......................................................*passim*

These cases are about Defendant JPMorgan Chase Bank, N.A.'s ("Chase") administration of a federal loan program designed to help small businesses—like plaintiffs Sha-Poppin Gourmet LLC and Ajira AI LLC (together, "Plaintiffs")—survive the hardship wrought by the global COVID-19 pandemic. Plaintiffs allege that they timely submitted applications for loans under the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") through Chase, but did not receive funding because Chase—acting contrary to the SBA's instructions— chose to submit the applications of its preferred clients first. Each of Plaintiffs' claims against Chase concern the bank's decision-making and processing of their PPP loan applications.

Rather than face these allegations, Chase has moved to force Plaintiffs into arbitration. The gist of its two identical motions is simple: Chase says that it only processed loan applications for its own customers, all of whom entered into agreements with the bank that, in turn, included arbitration clauses. While those agreements do not address the PPP (nor could they—they were drafted long before the PPP or even the pandemic existed), Chase posits that the clauses' broad wording demonstrates Plaintiffs agreement to arbitrate the claims asserted here. But while federal courts interpret arbitration clauses generally, Chase fails to show that arbitration should be compelled for at least three reasons.

First, while Chase presents evidence showing Plaintiffs agreed to its Deposit Account Agreement ("DAA") when they opened their deposit accounts, Chase fails to provide evidence showing that Sha-Poppin agreed to its Digital Service Agreement ("DSA") and the DSA's arbitration clause, or that Ajira agreed to its Online Services Agreement ("OSA") and arbitration clause. It therefore fails to meet its burden to show that an agreement to arbitrate exists based on those documents.

Second, Chase says that the Court should compel arbitration because the DAA—a

1

document to which Plaintiffs acknowledge they agreed—delegates questions of arbitrability to the arbitrator, not the Court. This argument fails as well. The DAA simply provides a cross-reference to two sets of arbitration rules that have competing stances on the issue of delegation. Many courts acknowledge that a cross reference to an arbitrator's rules comes nowhere close to demonstrating an unsophisticated party's—like the independent, small businesses at issue here—"clear and unmistakable" intent to delegate arbitrability. And that point aside, the DAA's reference to materially different arbitration rules could not possibly demonstrate such intent here.

Third, Chase says that because the DAA's arbitration clause uses broad "relating to" language, it must cover disputes addressing its processing of PPP applications because it only processed applications for its own banking clients. Not so. By its terms, the DAA only requires arbitration of claims relating to Chase's clients' deposit accounts and, here, Plaintiffs have no complaint about their accounts or any service relating to them. Even under the broad language used by the DAA, Chase cannot force them to arbitrate claims that they did not agree to arbitrate—particularly where the PPP has its own terms that do not reference the DAA or require arbitration.

For all these reasons, Chase's motion should be denied.

## BACKGROUND

The pertinent background to Chase's motion is not complicated. As set out in the respective Complaints, Plaintiffs and other small businesses turned to Chase in order to apply for PPP loans. Per the requirements set out by the SBA, Chase, as an SBA-approved lender, was required to process those loan applications on a first-come, first-served basis. Because it did not do so—and, as widely reported in the media, processed the loans of its favored customers first—Plaintiffs and other small businesses received smaller loan amounts than they would have had

2

Chase processed applications as it was supposed to do.

Plaintiff Sha-Poppin is a small Illinois business (having only five employees) that, going into 2020, maintained a deposit account at Chase. (*Sha-Poppin v. Chase, et al.*, No. 20-cv-2523, dkt. 1 at ¶¶ 56, 59 (N.D. Ill. Apr. 24, 2020).) When Plaintiff's proprietor, Stacy Hawkins-Armstrong, first opened Sha-Poppin's Chase account, she simply signed the paperwork that was presented to her; she did not have an attorney (or anyone else) present to negotiate or review the terms of her business's deposit account. (Declaration of Stacy Hawkins-Armstrong ("Hawkins-Armstrong Decl.") at ¶ 5.) Nor did she think or expect that the DAA applied to anything other than her business's deposit account and the services related to it. (*Id.*) Later, Ms. Hawkins-Armstrong also signed up for some of Chase's online services using her computer. (*Id.* at ¶ 6.) She has no recollection of being presented with any terms during that process, nor does she recall how or whether she "clicked boxes" during that signup process or indicated her assent to anything in particular. (*Id.*)

The same is true for Plaintiff Ajira. Ajira is also a small Illinois business (having only one employee) that submitted a PPP loan application through Chase. (*Ajira AI v. Chase, et al.*, No. 20-cv-04428, dkt. 1 at 39 (N.D. Ill. July 29, 2020).) Ajira also maintained Chase deposit accounts, also did not have legal representation in any way when opening its accounts, and also understood that the DAA only applied to its deposit accounts. (Declaration of Sandeep Mehta ("Mehta Decl.") at ¶ 4.) Likewise, Sandeep Mehta—Ajira's CEO—signed up for certain online services with Chase, but has no recollection of that signup process or the presentation of any terms applicable to those services.[1] (*Id.* at ¶ 5.)

---

[1]    Ajira's CFO, Ash Perti, was also a signer on Ajira's Chase accounts. But like Mr. Mehta, he did not have legal representation when signing for Ajira on any Chase account or service, nor does he recall

As set out in their respective Complaints, Plaintiffs applied for PPP loans through Chase. During the online application process, they each submitted their applications (using the federal form from the SBA) and were presented with the PPP application's terms and requirements, which only incorporated and reiterated the SBA's terms and requirements for PPP loan applications. (Hawkins-Armstrong Decl. ¶ 7; Mehta Decl. ¶ 6; *see also* Ex. A to Mehta Decl (Apr. 23, 2020 email from Chase stating "As a reminder, this is a U.S. SBA program that Chase facilitates as an SBA lender. The requirements and availability of funds under this program are driven by the SBA. To help you better understand these requirements as they currently stand, we recommend you review the program details available at SBA.gov or Treasury.gov."); Ex. C to Hawkins-Armstrong Decl. (PPP application); Ex. B to Mehta Decl. (PPP application).) At no point in the application process were Plaintiffs' deposit accounts, the DAA, or any arbitration agreement referenced. (Hawkins-Armstrong Decl. ¶ 7; Mehta Decl. ¶ 6.) No additional terms were referenced in subsequent communications from Chase about the PPP application process. (Hawkins-Armstrong Decl. ¶ 7; Mehta Decl. ¶ 6.)

## ARGUMENT

Chase's motion falters on three grounds. First, and as an initial matter, while Plaintiffs do not challenge that they agreed to the DAA, Chase fails to show that Plaintiffs agreed to be bound by the DSA or OSA arbitration clauses.[2] Second, the DAA does not evidence Plaintiffs' "clear and unmistakable" intent to delegate issues of arbitrability to the arbitrator—so the Court must decide all issues of arbitrability. And third, by its terms the DAA only covers disputes relating to

---

being presented with any specific terms when using Chase's online services. (*See* Declaration of Ash Perti.)

[2]     As referenced below, if the Court finds that Chase showed Plaintiffs did agree to the DSA or OSA, those agreements' arbitration provisions mirror the DAA's in all meaningful respects, so the second and third arguments would apply as well.

Plaintiffs' deposit accounts; because this case does not cover disputes relating to those accounts, there is no basis to compel arbitration.

**A.      Chase Has Not Demonstrated that Plaintiffs Agreed to the DSA or OSA.**

While Plaintiffs do not dispute Chase's narrative—and presentation of evidence—relating to their agreement to the DAA (which governs Plaintiffs' deposit accounts), (*see*, *e.g.*, *Sha-Poppin v. Chase, et al.*, No. 20-cv-2523, dkt. 60-1 at p. 8 of 237 (Oct. 15, 2020) (Sha-Poppin's signature card acknowledging receipt of the DAA)), Chase fails to show that Plaintiffs agreed to the DSA or OSA and, in turn, that they agreed to those agreements' arbitration clauses.

As the party seeking to compel arbitration, Chase has the burden of establishing that an agreement to arbitrate exists. *Mecum v. Weilert Custom Homes, LLC*, 239 F. Supp. 3d 1093, 1094–95 (N.D. Ill. 2017) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006)). For online arbitration—or any other online—agreements, "[t]his is a fact-intensive inquiry: [the court] cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–35 (7th Cir. 2016) (applying Illinois law and affirming denial of motion to compel arbitration). Thus, "the precise wording and format" is critical to whether an online agreement is enforceable click- or browsewrap. *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (applying Illinois law).

Here, for Sha-Poppin's purported agreement to the DSA, Chase relies on a single paragraph from the declaration of Nicholas Sergi, which states:

> On March 19, 2018, the Chase.com User ID for Stacy L. Hawkins Armstrong, which is affiliated with Sha-Poppin's account, was used to agree to Chase's [DSA]. During the enrollment process, the Chase.com User ID for Stacy L. Hawkins

5

> Armstrong was required to and did affirmatively click boxes acknowledging that
> the user had read and accepted the [DSA].

(*Sha-Poppin v. Chase, et al.,* No. 20-cv-2523, dkt. 60-1 at p. 103 of 237 (Oct. 15, 2020) .) But

unlike Chase's presentation of the actual signature card that evidenced her receipt of the DAA,

none of Chase's declarants provide any detail on the "boxes" that Ms. Armstrong purportedly

clicked, how she was "required" to click them, how doing so "acknowledg[ed] that she had read

and accepted the [DSA]," whether and how the DSA was provided to her (Was it on the same

webpage? Available via a hyperlink or a scroll box? Or was it just a textual reference, similar to

how the DAA and DSA generically cross-reference the JAMS or AAA rules?), or any details at

all about the webpage Chase says that Ms. Armstrong used. Plaintiff, for her part, does not recall

being presented with, or asked to agree to, any terms whatsoever. (Hawkins-Armstrong Decl. ¶

6.) The same is true for Chase's attempt to show Ajira's agreement to the OSA, which mirrors

the arguments and declarant testimony addressed above. (*See Ajira AI v. Chase, et al.*, No. 20-

cv-04428, dkt. 16 at p. 106 of 244 (Oct. 14, 2020).) Plaintiffs therefore dispute that they agreed

to be bound by the terms of any version of the DSA or OSA when using Chase's online services.

Because Chase's argument asks this Court to "presume" Plaintiffs' knowing acceptance

of the DSA and OSA, and their arbitration provisions, it should be rejected. *Sgouros*, 817 F.3d at

1034–35. Indeed, similar "evidentiary gaps" routinely preclude the enforcement of online

agreements and, consequently, underlie the denial of motions to compel arbitration.[3] *Mason v.*

---

[3]     The decisions cited by Chase, (Sha Poppin Mot. at 11-12; Ajira Mot. at 11), engaged in similar
analyses to determine whether a purported clickwrap agreement was enforceable. *See, e.g.*, *Sherman v. AT
& T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) (discussing, *inter alia*,
language of clickwrap agreement and presence of hyperlinked terms); *Friends for Health: Supporting N.
Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018)
(discussing testimony describing how enrollees were given the opportunity to review terms "either
through a scroll box or through a link to the user agreement."). And in *O'Quinn v. Comcast Corp.*, a
customer was held to an arbitration agreement after signing what amounted to multiple signature cards, in

*Midland Funding LLC*, 815 F. App'x 320, 325–26 (11th Cir. 2020) (denying motion to compel where defendant failed to offer sufficient proof of clickwrap agreement); *see also, e.g.*, *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016) (affirming denial of motion to compel where declarant stated that "he 'was able to ascertain that Plaintiff had applied for the [credit card] over the internet' and that plaintiff 'accepted the terms governing her account' . . . [but did not] explain how he knows this, nor [did] he substantiate the claim with documentary proof."); *Rui Chen v. Premier Fin. All., Inc.*, No. 18-CV-3771 YGR, 2019 WL 280944, at *3 (N.D. Cal. Jan. 22, 2019) (denying motion to compel where "[d]efendants [had] not offered evidence explaining the design and content of the webpage or how the [underlying agreement, which contained an arbitration provision] appeared on the [defendant's] website"); *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410110, at *14 (S.D. Fla. June 14, 2018) (denying motion to compel arbitration where defendant did not "produce any evidence that substantiated [its] assertion" that plaintiff agreed to arbitration via a clickwrap agreement).

The result should be the same here. Chase presents no actual evidence demonstrating Plaintiffs' assent to be bound by the DSA. It has therefore failed to meet its burden of demonstrating an agreement to arbitrate based on that document.

**B.     The DAA's Reference to the JAMS or AAA Rules Does Not "Clearly and Unmistakably" Delegate Scope Issues to an Arbitrator.**

Next, Chase says that DAA's cross-reference to the JAMS or AAA rules evidences

---

addition to specific declarant testimony about the way Comcast ensured customers would in fact review an online version of the agreement to arbitrate. No. 10 C 2491, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010); *O'Quinn v. Comcast Corp.*, No. 10-cv-2491, dkt. 18 (declaration of Wendy Farley) (N.D. Ill. Jul. 27, 2010) (declaration from Comcast executive presenting evidence of (i) multiple documents signed by the plaintiff acknowledging receipt of agreement and plaintiff's agreement to be bound, along with (ii) Comcast practice of requiring installation technician to "allow the customer to review the [agreement] online").

Plaintiffs' intent to delegate the issue of arbitrability to the arbitrator.[4] (Mot. at 12–13.) But the question is an open one in this Circuit—particularly under the facts at issue here—and there is every reason to reject the argument Chase advances.

"[T]he question of arbitrability . . . is undeniably an issue for judicial determination." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Parties can overcome this presumption by agreement. But unlike issues whose outcome cheats in favor of arbitration, *see, e.g.*, *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421 (7th Cir. 2001), the Supreme Court has "consistently held" that the question of arbitrability requires a "clear and unmistakable" manifestation of the parties' intent to delegate the issue to the arbitrator, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), which is a "heightened standard," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010). An express delegation clause—i.e., an explicit contractual agreement stating the parties' agreement that an arbitrator, and not the court, will decide issues of arbitrability—manifests the "clearest possible intent" to delegate questions of arbitrability to the arbitrator. *JPay, Inc. v. Kobel*, 904 F.3d 923, 939 (11th Cir. 2018), *cert. denied,* 139 S. Ct. 1545, 203 L. Ed. 2d 711 (2019). Indeed, *those* clauses—and not a cross-reference to an arbitrator's rules—underlie the Supreme Court's "clear and unmistakable" precedent.[5] *See*, *e.g.*, *Rent-A-Ctr.*, 561 U.S. at 66–67 (holding that a provision giving the

---

[4]     If the Court finds that Sha-Poppin agreed to the DSA, all the arguments stated in this section apply equally to that agreement, which includes the same cross reference to the JAMS and AAA procedural rules. The same should hold for Ajira: the OSA uses slightly different language, but also cross references the competing JAMS and AAA procedural rules.

[5]     Chase suggests that the OSA includes something resembling an express delegation clause, which says that it applies to "the applicability of this arbitration clause." (Ajira Mot. at 13.) But the clause falls short of stating the parties' clear and unmistakable agreement that an arbitrator will decide arbitrability issues; instead, it only points the reader back to the OSA's arbitration provision and its competing cross-

arbitrator "and not any federal, state, or local court or agency . . . exclusive authority to resolve any dispute relating to [arbitrability]" clearly and unmistakably delegated arbitrability).

Less clear is the situation we have here, where the DAA is silent on the issue of who should decide arbitrability but states that if a claim is filed with either JAMS or AAA, then the selected "organization will apply its code of procedures." (Dkt. 60-1 at p. 30 of 237.) Neither the Supreme Court nor the Seventh Circuit has determined whether a cross reference to an arbitrators' procedural rules (much less competing sets of rules) counts as a "clear and unmistakable" expression of delegation. *Info. Sys. Audit and Control Ass'n v. TeleCommc'n Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *2 (N.D. Ill. June 23, 2017). Still—at least in those cases involving two sophisticated parties and a single referenced set of arbitration rules—many courts have held that it does. *Id.*

But the issue is not so black and white. Several courts have called out this "consensus view" as nothing more than a creature of its own momentum—one that is "incongruous with case law mandating delegation clauses be clear and unmistakable," particularly where, like here, the party being forced to arbitration is not sophisticated. *Ashworth v. Five Guys Operations, LLC*, No. CV 3:16-06646, 2016 WL 7422679, at *3 (S.D.W. Va. Dec. 22, 2016) (opining that the consensus view "border[s] on the absurd"). *See also Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–11 (1st Cir. 2009) (expressing doubt that a mere cross reference to the AAA rules was clear and unmistakable evidence of franchisees' intent to delegate question of arbitrability). As one court summed up:

> [I]t may be a difficult proposition to say that the text of an arbitration clause itself, when found among contract boilerplate, may constitute clear and unmistakable evidence of an unsophisticated party's intentions. But incorporating forty pages of

references to the JAMS and AAA rules. (*See Ajira v. Chase*, No. 20-cv-4428, dkt. 16 at p. 149 of 244 (N.D. Ill. Oct. 14, 2020).) Thus, it does not clearly and unmistakably show an intent to delegate.

> arbitration rules into an arbitration clause is tantamount to inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take "a good joke too far."

*Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 429 (E.D. Pa. 2016) (citing *Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3d Cir. 1948). This more circumspect approach—which calls for a thoughtful (and actual) analysis of the contracting parties' intent—is in accord with the Seventh Circuit's instruction in *Sgouros* that courts "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action." 817 F.3d at 1035. Indeed, that warning should apply with considerable force here, where the underlying arbitration clause does not provide a hyperlink or instruction about how to locate the applicable procedural rules, a reference or specific direction to a rule about delegation, or even an explanation of which of the AAA or JAMS rulesets (there are many[6]) might apply. (Dkt. 60-1 at p. 30 of 237.) *Doe v. Natt*, No. 2D19-1383, 2020 WL 1486926, at *7 (Fla. Dist. Ct. App. Mar. 25, 2020), *reh'g denied,* 299 So. 3d 599 (Fla. Dist. Ct. App. 2020) (agreement's generic reference to AAA rules "strikes us as a rather obscure way of evincing 'clear and unmistakable evidence' that the parties intended to preclude a court from deciding an issue that would ordinarily be decided by a court.").

To be sure, there is considerable—and growing—support for the view that a simple cross-reference to the AAA (or some other arbitrators') rules does not satisfy the Supreme Court's "clear and unmistakable" requirement in cases where at least one party is unsophisticated. *See*, *e.g.*, *Chong v. 7-Eleven, Inc.*, No. CV 18-1542, 2019 WL 1003135, at *10

---

[6]     JAMS has around 16 different sets of rules, guidelines, protocols, and procedures. JAMS ADR Rules, Clauses and Procedures, available at https://www.jamsadr.com/adr-rules-procedures/. The AAA has 7 sets of rules. Rules, Forms, & Fees, available at https://www.adr.org/Rules.

(E.D. Pa. Feb. 28, 2019) (*quoting Allstate Ins.*, 171 F. Supp. 3d at 428) ("[A] cross-reference to a

set of arbitration rules containing a provision that vests an arbitrator with the authority to

determine his or her own jurisdiction does not automatically constitute clear and unmistakable

evidence that the parties intended to arbitrate threshold questions of arbitrability—at least where

those parties are unsophisticated."); *Stone v. Wells Fargo*, 361 F. Supp. 3d 539, 555 (D. Md.

2019) ("It strains credulity to believe that the consumer knew—much less intended—that the

cross-reference directed an arbitrator to decide arbitrability."); *Eiess v. USAA Fed. Sav. Bank*,

404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (quoting *Ingalls v. Spotify USA, Inc.*, No. C 16-

03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) ("[A] majority of the lower

courts in the Ninth Circuit have 'held that incorporation of the AAA rules was insufficient to

establish delegation in consumer contracts involving at least one unsophisticated party.'");

*Johnson-Linzy v. Conifer Care Communities A, LLC*, 2020 COA 88, ¶ 19, 469 P.3d 537, 542

("Expecting a consumer in Johnson-Linzy's position to read and reconcile [procedural rules of

arbitration], and, based on that evaluation, definitively conclude that she is consenting to forgo

judicial review of the agreement's enforceability, simply does not meet [the] threshold."); *In re

Little*, 610 B.R. 558, 568 (Bankr. D.S.C. 2020) (following *Stone v. Wells Fargo Bank*);

*Flandreau Pub. Sch. Dist. No. 50-3 v. G.A. Johnson Const., Inc.*, 2005 S.D. 87, 701 N.W.2d 430,

437 n.6 (distinguishing between express delegation clauses and the incorporation of AAA rules).

Further, courts have reached this conclusion both in cases involving consumer contracts and

those involving smaller and unsophisticated business entities, like independent business owners

or franchisees.[7] *See*, *e.g.*, *Meadows v. Dickey's Barbecue Rests., Inc.*, 144 F. Supp.3d 1069,

---

[7]        The Seventh Circuit has suggested that the hallmark of sophistication is legal representation.
*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724-25 (7th Cir. 2008). Here, as
noted above, both Plaintiffs are small businesses—each with five employees or less—that did not have

11

1078–79 (N.D. Cal. Nov. 12, 2015) (finding no clear and unmistakable evidence that franchisees intended an arbitrator to decide questions of arbitrability even though the AAA rules were incorporated in the arbitration provision because the franchisees were "far less sophisticated" than the franchisor-defendant.).

Further, and beyond the question of whether a cross-reference to rules of arbitration satisfies the Supreme Court's requirement of "clear and unmistakable" language, the DAA's stance on delegation is itself ambiguous. As Chase recounts, the DAA lets the party filing a claim in arbitration choose JAMS or AAA, which will determine the "code of procedures" that will apply for any filed arbitration.[8] (Mot. at 12–13.) But those rulesets treat the issue of delegation differently.[9] JAMS Comprehensive Arbitration Rule 11(b) provides that disputes over the scope of the agreement "shall be submitted to and ruled on by the Arbitrator," which is phrased in "mandatory terms." *In re: Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2018 WL 4677830, at *6 (E.D. Va. Sept. 6, 2018), *report and recommendation adopted sub nom. In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2018 WL 6795836 (E.D. Va. Dec. 6, 2018). But AAA Commercial Arbitration Rule 7(b) "is permissive, not mandatory," *id.*, and only notes that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the

---

legal teams or personnel assist in their interactions with Chase. (Hawkins-Armstrong Decl. ¶ 7; Mehta Decl. ¶ 6.)

[8]     The fact that the DAA provides for elective (rather than mandatory) arbitration adds additional ambiguity on the delegation issue. Specifically, the DAA states that the AAA or JAMS rules apply only *when* an arbitration is commenced (i.e., the applicability of those rules are "conditional on there being an arbitration"), which is "not a very helpful answer"—much less a "clear and unmistakable" one—to the question of who the parties intended to decide arbitrability. *Natt*, 2020 WL 1486926, at *7-10.

[9]     For the purposes of this argument we assume Chase intended the JAMS Comprehensive Arbitration Rules & Procedures and the AAA Commercial Arbitration Rules and Mediation Procedures to apply, given those rules correspond to the specific rules cited by Chase. (*See* Sha Poppin Mot. at 12-13.) But as noted *supra* note 3, the DAA doesn't specify which rules apply.

arbitrability of any claim or counterclaim," AAA Rule 7(b). The AAA rule, then, only "confers an adjudicative power upon the arbitrator, but . . . does not purport to make that power exclusive . . . [and does not] purport to contractually remove that adjudicative power from a court of competent jurisdiction." *Natt*, 2020 WL 1486926, at *7. *See also Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790, 137 Cal. Rept. 3d 773, 789 (2012) (emphasis in original) (AAA Rule 7(b) "tells the reader almost nothing, since a court *also* has power to decide such issues, and nothing in the AAA rules states that the . . . arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so, particularly if litigation has already been commenced.") (emphasis in original). Thus, because the DAA presents competing options for how the issue of delegation might proceed—i.e., it either *must* or *may* go to the arbitrator—it does not evidence any particular intent, much less a "clear and unmistakable" one. *See Johnson-Linzy*, 469 P.3d at 542 ("The incorporation of [two] sets of rules cannot 'plainly and unambiguously empower an arbiter to decide arbitrability.'") (citation omitted).

In sum, while Chase asks the Court to rubberstamp this issue, an evaluation of the parties' *actual* agreement fails to evidence a "clear and unmistakable" intent—particularly on the part of Plaintiffs—to delegate the issue of arbitrability. The Court must make the determination itself.

## C. Plaintiffs' Claims Do Not Fall Under the Scope of the DAA's Arbitration Agreement.

Finally, Chase argues that because the DAA's arbitration clause[10] includes broad

---

[10] While Chase has not demonstrated its burden to hold Plaintiffs to the DSA's or OSA's arbitration clauses for the reasons described *supra*, the arguments discussed herein apply equally to Chase's one-sentence argument pertaining to the scope of the DSA's and OSA's arbitration provisions, which like the DAA's, only concerns claims "related to" specific Chase-related services—and not Chase's administration of a federal loan program. (*See* Sha Poppin Mot. at 15; Ajira Mot. at 15.) In its Motion against Ajira, Chase suggests the OSA's reach is broader than the DSA's (saying that it applies to "*any*

"relating to" language, it sweeps in all disputes having any relation whatsoever with Plaintiff's deposit account. While the law certainly treats such language expansively, Chase cannot force Plaintiffs to arbitrate claims—including those at issue here—that they did not agree to arbitrate.[11]

Unlike the presumption for gateway issues, questions as to the "scope of arbitrable issues should be resolved in favor of arbitration." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24– 25 (1983)). "But that general preference yields to explicit contrary contractual language." *Wisconsin Local Gov't Prop. Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 415 (7th Cir. 2016). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Salsitz v. Kreiss*, 198 Ill.2d 1, 13, 761 N.E.2d 724, 731 (2001) ("The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown

---

*online service*"), but, in reality, the scope of each agreement covers a defined and overlapping set of services. (*See Ajira v. Chase*, No. 20-cv-4428, dkt. 16 at p. 2 (defining "Online Service") and 116 of 244 (N.D. Ill. Oct. 14, 2020).)

[11]     Chase's brief begins with an impressive footnote. (Sha Poppin Mot. at 1 n.1.) But its cases, which deal with the DAA, have no application here because they pertain to claims expressly and obviously covered by that agreement (i.e., ones concerning the parties' deposit accounts). *See, e.g.*, *Clements v. JPMorgan Chase Bank, N.A.*, No. 18 C 660, slip op. at 3–14 (N.D. Ill. Dec. 12, 2018) (case about "allegedly fraudulent debts against [plaintiff's] checking account"); *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 CIV. 10947 (KPF), 2020 WL 4345755, at *7 (S.D.N.Y. July 29, 2020) (case about checks purchased from deposit accounts); *Sunmonu v. Chase Bank, N.A.*, No. CV GLR-18-1695, 2019 WL 1258788, at *1 (D. Md. Mar. 19, 2019) (case about Chase's alleged failure to deliver funds from plaintiff's deposit account); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV172477JGBSPX, 2018 WL 4726042, at *1 (C.D. Cal. Sept. 18, 2018) (case about overdraft fees on deposit account); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-CIV-MORENO, 2014 WL 4063046, at *1 (S.D. Fla. Aug. 15, 2014) (case about Chase's lowering limits on debit card tied to deposit account); *Scott v. JPMorgan Chase & Co.*, No. 13 CIV. 646 KPF, 2014 WL 338753, at *1 (S.D.N.Y. Jan. 30, 2014), *aff'd*, 603 F. App'x 33 (2d Cir. 2015) (case about overdraft protection services and fees related to deposit account); *Novak v. JP Morgan Chase Bank, NA*, No. 06-14862, 2008 WL 907380, at *1 (E.D. Mich. Mar. 31, 2008) (case about unauthorized withdrawa from deposit account).

by the clear language of the agreement and their intentions expressed in that language. An arbitration agreement will not be extended by construction or implication."). Thus, while arbitration provisions using broad terms—such as "relating to" or "arising from"—are interpreted generously, those terms are necessarily bound by the objects to which they apply. *Huron Consulting Grp. Inc. v. Gruner*, No. 17 C 6042, 2018 WL 572709, at *8 (N.D. Ill. Jan. 24, 2018) (citing and discussing *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 498, 765 N.E.2d 1079, 1085 (1st Dist. 2002); *Davis v. Fenton*, 26 F. Supp. 3d 727, 740 (N.D. Ill. 2014)). In other words, "relating to" or "arising from" language extends only to disputes that have their "origin or genesis" in the subjects to which that language refers. *Gore*, 666 F.3d at 1033.

While the DAA's arbitration agreement is broad, it is—by its terms—broadly related to the DAA and, thus, does not cover claims related to Chase's administration of a federal loan program, which has its own set of terms and requirements. The Seventh Circuit's decision in *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) helps explain why. In *Rosenblum*, the plaintiff sold his business to the defendant via a purchase agreement and, as a condition precedent to the sale, executed an employment agreement that allowed the plaintiff to continue working for his old business. *Id.* at 660. The employment agreement—but not the purchase agreement—included an arbitration clause, which broadly provided that "any matter in dispute under or relating to this Agreement shall . . . be finally resolved by binding arbitration." *Id.* The defendant failed to make the payments required under the parties' purchase agreement, so the plaintiff sued. *Id.* The defendant moved to dismiss in favor of arbitration. *Id.* at 661. The district court granted the motion, concluding that "[t]he arbitration provision here is a broad one: it covers all matters relating to the employment agreement." *Id.* (citation omitted). Plaintiff appealed.

15

The Seventh Circuit reversed. On review, the appellate court acknowledged the two agreements were "related;" after all, one agreement was a condition precedent to the other, and the plaintiff would not have been employed or sought employment by the defendant but for the purchase agreement. *Id.* at 663. Still, the court found that the employment agreement's "arbitration clause applie[d], by its terms, to 'any matter in dispute under or relating to *this* Agreement' . . . [and] therefore cover[ed] all aspects of Mr. Rosenblum's employment relationship with Travelbyus." *Id.* at 664 (emphasis in original). Thus—and despite the relationship between the purchase and the plaintiff's employment—the appellate court held that the employment agreement's "arbitration clause [was] not susceptible to an interpretation that include[d] [the purchase agreement], which [had] nothing to do with Mr. Rosenblum's employment with Travelbyus. To include Mr. Rosenblum's claims within the scope of [the] arbitration clause would expand the operation of that clause beyond its express terms and beyond the intent of the parties." *Id.*

This Court addressed a similar situation in *Nucap Industries, Inc. v. Robert Bosch LLC*, No. 15-CV-2207, 2015 WL 4038714 (N.D. Ill. July 1, 2015) (Gottschall, J.). That case involved an intellectual property dispute between two parties that had previously entered into a number of purchase agreements, which contained arbitration clauses utilizing broad "arising out of or relating to" language. *Id.* at *1–2, 4. The defendant moved to compel arbitration based on those agreements. *Id.* The court acknowledged that the purchase orders were "related" to the terms underlying the intellectual property agreement, because "but for the former, the latter never would have existed." *Id.* at *7. Nevertheless, the court declined to compel based on this "causal link" between the two because, as in *Rosenblum*, "there [was] no indication that the parties intended" their agreements governing the purchase orders should encompass down-the-road

16

agreements relating to separate matters. *Id.* (citing *Rosenblum*, 299 F.3d at 663).

Several other courts have reached the same result: Where an arbitration agreement broadly covers any claims or disputes "relating to" a particular agreement, courts will enforce those agreements by their terms and, as a result, only apply them to disputes "relating to," "regarding," or "arising out of" that agreement—but not to claims concerning a different agreement altogether. *See*, *e.g.*, *Huron Consulting Grp.*, 2018 WL 572709, at *10 (finding that the relevant arbitration agreement provided "no indication of the parties' intent to arbitrate claims for breach of [a separate agreement]," and reasoning that the presence of allegations regarding the "breach of [the first agreement, which] may include similar factual allegations to [a] claim for breach of the [second agreement] [did] not mean that the arbitration clause in the [first] agreement necessarily extends to both."); *Shriner v. Signal Fin. Co.*, 92 F. App'x 322, 326 (7th Cir. 2003) (citation omitted) (discussing similar application of Indiana law, where court of appeals addressed clause covering "[a]ny controversy or claim arising out of or relating to this Agreement" and " found that the provision governed disputes arising out of the agreement, [but] not the parties' employment relationship in general."); *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 9–10 (1st Cir. 2004) (finding that broad arbitration clause covering "[a]ny controversy or claim arising out of or relating [an] Employment Agreement" only referred to, and thus required arbitration of, disputes arising under or related to that agreement); *Snyder v. Wells Fargo Bank, N.A.*, No. 11 CIV. 4496 SAS, 2011 WL 6382707, at *4 (S.D.N.Y. Dec. 19, 2011) ("[J]ust because the IRA agreement contains a broad arbitration clause, does not mean that Snyder can be forced to arbitrate claims arising out of a related but distinct contract."). *See also Slaughter v. Nat'l R.R. Passenger Corp.*, No. 19-CV-2920 (APM), 2020 WL 2527193, at *5 (D.D.C. May 18, 2020) (rejecting as untenable argument that broad arbitration clause covered

17

any possible dispute between the parties).

Here, as in *Rosenblum* and *Nucap*, the DAA's arbitration clause covers "any claims or disputes arising from or relating to *this* agreement."[12] (Sha Poppin Mot. at 14 (emphasis added).) Thus, while the DAA's arbitration clause undoubtedly covers "all aspects" of Plaintiffs' deposit accounts, Chase identifies nothing other than a "causal link" between it and the claims at issue here, which concern Chase's administration of a federal loan program under a completely different set of terms and obligations. *Nucap*, 2015 WL 4038714, at *7. Neither the DAA nor its arbitration clause says anything about its application to *other* services offered by Chase, much less Chase's obligation to comply with the rules and regulations concerning a federal loan program (aimed at addressing fallout from a global pandemic) that hadn't yet come into existence. Chase identifies no reason for the Court to balloon the arbitration clause beyond its express terms and, as such, its reach is limited to claims "related to" the DAA or Plaintiffs' deposit accounts. And because the PPP loan application is a separate agreement with separate terms, it is not part of, nor does it "relate to" services pursuant to the DAA.

Nothing raised by Chase suggests a different result. For example, Chase points out that "but for [its deposit] account, [Plaintiff] would not and could not have applied for a PPP loan through Chase." (Sha Poppin Mot. at 14.) This mirrors the arguments rejected in *Rosenblum* and *Nucap* where, like here, the defendants argued that arbitration should be compelled because the agreements with arbitration clauses came first; were, strictly speaking, "but for" causes of the plaintiffs' claims (i.e., they formed the relationship between the two parties); and included

---

[12]     There are other terms of the arbitration clause, but all are narrower and describe aspects of the DAA and its related services. (*See* dkt. 60-1 at p. 30 of 237.) Consistent with Plaintiffs' expectations, (Hawkins-Armstrong Decl. ¶ 7; Mehta Decl. ¶ 6), none attempt to reach beyond the deposit account or its related agreement.

arbitration agreements that covered all claims "related to" the parties' prior agreements. But here, as in *Rosenblum* and *Nucap*, the agreements relating to the PPP loan application made *no* reference to the DAA (or any other loan program or product), and the terms of the PPP application—just like the communications that Chase sent to Plaintiffs about their applications, (Ex. A to Hawkins-Armstrong Decl.; Ex. A to Mehta Decl.)—do *not* include an arbitration clause.[13] Thus, because the DAA is, by its terms, limited to disputes "relating to or arising from" *that* agreement, it is not "broad enough to encompass" Plaintiff's claims relating to the PPP. *Nucap*, 2015 WL 4038714, at *5 (citing *Gore*, 666 F.3d at 1033).

These same considerations apply to Chase's one other argument, where it notes that certain of Plaintiffs' claims allege supporting details about the parties' banking relationship. (Mot. at 15.) The Fourth Circuit's decision in *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762 (4th Cir. 2006) is also instructive on this issue. In that case, the parties "had two distinct relationships:" one relating to a loan, and one relating to an investment, for which the loan was ultimately used. *Id.* at 768. While there was undoubtedly crossover between the roles, the court noted that the bank's "two roles as lender and adviser were distinct." *Id.* The loan document included a broad arbitration clause, which the bank tried to enforce when Schmidt brought claims relating to its provision of financial advice. *Id.* at 765. But because "the Schmidt Defendants' state-court claims derive[d] solely from actions Wachovia took as a financial advisor," rather than from the defendants' provision of the loan, the court affirmed the lower court's refusal to compel arbitration. *Id.* at 769. The same holds here. Chase played two roles

---

[13]     The terms that applied to Plaintiff's PPP loan application were limited to the "requirements and instructions" for the program provided by the SBA, along with a few "general information" provided by Chase. (*See* Ex. B to Hawkins-Armstrong Decl.)

with respect to Plaintiffs: deposit account provider and processor for their PPP loan applications. Because these roles are distinct and Plaintiffs' claims relate solely to the latter, the fact that PPP loan funds were supposed to find their way into a deposit account (just as Schmidt used Wachovia's loans in connection with Wachovia's financial advice) does not make this claim "about" that account or services "related to" that account.

In sum, because Plaintiffs' claims regarding Chase's handling of PPP loan applications do not "relate to" the DAA or their deposit accounts, Chase lacks any basis to compel arbitration based on the DAA's arbitration clause.

## CONCLUSION

For all the reasons discussed herein, the Court should deny Chase's motion to compel arbitration.

Respectfully submitted,

**SHA-POPPIN GOURMET POPCORN LLC**, individually and on behalf of all others similarly situated,

Dated: November 2, 2020      By: /s/ Benjamin Thomassen
           One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
Ari J Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Daniel J. Schneider
dschneider@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Sha Poppin Gourmet Popcorn LLC and the Putative Class*

**AJIRA AI LLC**, individually and on behalf of all others similarly situated,

Dated: November 2, 2020      By: /s/ Kasif Khowaja
           One of Plaintiff's Attorneys

Kasif Khowaja
THE KHOWAJA LAW FIRM LLC
8 South Michigan Avenue, Suite 2600
Chicago, Illinois 60603
Tel: 312.201.0575
kasif@khowajalaw.com

Matthew R. McCarley (*Pro Hac Vice Pending*)

21

Texas Bar No. 24041426
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel: 214.890.0711
Fax: 214.890.0712
mmccarley@fnlawfirm.com

*Counsel for Plaintiff Ajira AI LLC and the Putative Class*