**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Sha-Poppin Gourmet Popcorn LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20-cv-2523 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| JPMorgan Chase Bank, N.A., and | ) | |
| Phunware, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This proposed class action is one of at least seven cases filed in federal courts across the

nation in which the plaintiff alleges that defendant JPMorgan Chase Bank, N.A. ("Chase")

improperly processed applications for small business loans under the Paycheck Protection

Program ("PPP") established by the Coronavirus Aid, Relief, and Economic Security Act

("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). *See In re JPMorgan Chase*

*Paycheck Prot. Program Litig.*, 481 F. Supp. 3d 1342, 1344–45 (J.P.M.L. 2020) (denying motion

to transfer similar suits under 28 U.S.C. § 1407). Through the PPP program, Congress made

$349 billion in small business loans available in an effort to mitigate the economic impacts of

COVID-19-related shutdowns. *See* CARES Act §§ 1102, 1106, 134 Stat. at 286, 297. The U.S.

Small Business Administration ("SBA") oversaw the PPP program, but approved private lenders,

including Chase, processed all loan applications and made the loans. *See id.* At issue here is an

SBA regulation requiring lenders to process PPP loan applications on a "first-come, first-served"

basis. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed.

Reg. 20811, 20813 (Apr. 15, 2020). In its amended complaint, plaintiff Sha-Poppin Gourmet

Popcorn LLC ("Sha-Poppin"), a five-employee gourmet popcorn company based in

Westchester, Illinois, alleges that Chase gave preferential treatment to certain large or politically connected customers, including co-defendant Phunware, Inc. ("Phunware"). *See* Am. Compl.[1]  ¶¶ 47-54, ECF No. 69.

The court has before it Phunware's motion to dismiss Sha-Poppin's complaint against it for lack of standing under Article III of the Constitution, for lack of personal jurisdiction, and for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (2), and (6). The court resolves the motion on personal jurisdiction grounds. "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). But "[w]here, as here, . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a [more] difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588; *see Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 n.2 (7th Cir. 2000).

## I. Motion Standard

A complaint does not need to include allegations establishing personal jurisdiction, "but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Phunware challenges the sufficiency of the amended complaint here, and no

---

[1] Phunware moved to dismiss plaintiff's original complaint. ECF No. 25 at 1. Sha-Poppin subsequently amended its complaint to drop its claims against two other defendants but did not otherwise alter the complaint. *Compare* Am. Compl., ECF No. 69 *with* Compl., ECF No. 1. The court cites the operative amended complaint in this order.

evidentiary hearing has been requested or held. *See* Mem. Supp. Phunware Mot. to Dismiss 6, ECF No. 26. As a result, Sha-Poppin has "only the burden of making a prima facie case for personal jurisdiction." *Curry*, 949 F.3d at 393 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010)). To decide whether plaintiff has made a prima facie case of personal jurisdiction, the court accepts the well-pleaded facts alleged in the complaint as true and resolves any factual disputes in the plaintiff's favor. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 574 (7th Cir. 2020); *Curry*, 949 F.3d at 392.

## II. Summary of Claim Against Phunware

Sha-Poppin held a small business banking account with Chase. Am. Compl. ¶ 59. When Chase began accepting PPP loan applications on April 3, 2020, Sha-Poppin founder and manager Stacey Hawkins-Armstrong ("Hawkins-Armstrong") began attempting to apply via Chase's website, but each time she applied that day and over the next several days she received error messages telling her not to contact Chase customer service about the error. *See id.* ¶¶ 60–61. Although the PPP loan application period had not yet closed, a Chase employee later called Hawkins-Armstrong to suggest subtly that she take her application elsewhere. *See id.* ¶ 63. She eventually did so, but the $6,000 PPP loan Sha-Poppin obtained from another bank was four times smaller than it would have been if Chase had processed Sha-Poppin's loan application on a first-come, first-served basis. *See id.* ¶¶ 65–69.

Citing reports in the press, Sha-Poppin alleges that its experience was typical of many other Chase commercial banking customers who found Chase's loan application website to be sporadically available on April 3, 2020. *Id.* ¶ 38. This was all of part of "a carefully executed plan by Chase" intended to steer PPP loans to preferred customers. *See id.* ¶¶ 50–54. Chase aided its preferred customers, resulting in nearly all those customers receiving PPP loans, while

only one in fifteen of Chase's lower-priority customers obtained a PPP loan from Chase. *See id.* ¶¶ 37–39, 47–54 (citing press reports for statistics).

Sha-Poppin pleads five claims under Illinois law against Chase, and a single count (count VI) of unjust enrichment against Phunware. *See id.* at 23–31. Phunware is alleged to be a Delaware corporation with a principal place of business in Austin, Texas. *Id.* ¶ 16.

In addition to proposing to represent a plaintiff class of Chase PPP loan applicants, see *id.* ¶ 70, Sha-Poppin sues Phunware as a representative of a potential defendant class comprised, with some exceptions, of "[a]ll Chase Commercial Banking account holders that applied for a PPP loan through Chase, and whose application was approved not on a first-come, first-served basis." *Id.* ¶ 76.

### III.  Personal Jurisdiction Principles

The federal Due Process Clause authorizes courts to exercise personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Illinois's long-arm statute stretches as far as the Due Process Clauses of the Illinois and federal constitutions permit. *See* 735 Ill. Comp. Stat. § 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of*

4

*Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (holding that "there is no operative difference between those two constitutional limits"); *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (assuming that Illinois and federal standards for the exercise of personal jurisdiction are coextensive). Thus, Phunware's personal jurisdiction challenge collapses into a minimum contacts analysis. *See, e.g., J.S.T.*, 965 F.3d at 575.

### IV. Minimum Contacts Analysis

Sha-Poppin argues that this court can exercise specific personal jurisdiction over Phunware.[2] Resp. to Mot. to Dismiss 6-10, ECF No. 64. A court may exercise specific personal jurisdiction over a defendant based on the defendant's contacts with the forum state in matters relating to the subject matter of the plaintiff's claims. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n.8 (1984). The Seventh Circuit has identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted). The analysis is not "mechanical or quantitative." *Int'l Shoe*, 326 U.S. at 319. The ultimate question is "whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue*, 338 F.3d at 780 (emphasis in original).

---

[2] General jurisdiction, not at issue here, is available when a defendant's contacts with the forum state are "continuous and systematic," even when a plaintiff's claims do not arise out of those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

As far as appears from the amended complaint, Phunware did not apply for a loan in Illinois. Nor did it direct a loan application (or anything else) to Illinois at any time. *See* Am. Compl. ¶¶ 47–49. Sha-Poppin does not argue otherwise. *See* Resp. to Mot. to Dismiss 7-9. Sha-Poppin instead relies on several cases decided under the stream of commerce theory. *See, e.g., uBid,* 623 F.3d at 433; *Payton* v. *Kale Realty, LLC,* 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014). Under the stream of commerce doctrine, if a "defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state." *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 550 (7th Cir. 2004) (citing *World-Wide,* 444 U.S. at 298); *see generally Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 926–27 (2011). Sha-Poppin reasons that because Phunware allegedly knew it would be jumping the line of Chase PPP loan applications, it is reasonable to infer that it was aware that loan applicants in other states, such as Illinois, would be harmed. *See* Resp. to Mot. to Dismiss at 7-8; Am. Compl. ¶¶ 47, 120. Thus, Sha-Poppin argues, Phunware's submission of a PPP loan application formed the necessary minimum contacts with Illinois and every other state. *See* Resp. to Mot. to Dismiss 7-8.

Sha-Poppin cites *Walden v. Fiore,* 571 U.S. 277 (2014), but *Walden* actually undermines Sha-Poppin's position. Resp. to Mot. to Dismiss 8. As in *Walden,* Sha-Poppin's approach to specific jurisdiction "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden,* 571 U.S. at 289. Ample contacts between Sha-Poppin and Chase in Illinois have been alleged, and Sha-Poppin claims to have been harmed in Illinois. *See* Am. Compl. ¶¶ 55-63. But Sha-Poppin's interactions with Chase in Illinois do not create the required connection between Illinois and Phunware because "the defendant [here,

Phunware], not the plaintiff or third parties, . . . must create contacts with the forum State."
*Walden*, 571 U.S. at 291. Nor does the fact that Sha-Poppin experienced harm in Illinois create
specific jurisdiction, for "mere injury to a forum resident is not a sufficient connection to the
forum." *Id.* at 290.

The Seventh Circuit's analysis of an unjust enrichment claim in *J.S.T. Corp. v. Foxconn
Interconnect Tech. Ltd.*, 965 F.3d 571 (7th Cir. 2020), is instructive.[3] The dispute in *J.S.T.*
concerned the plaintiff's proprietary drawings. Plaintiff J.S.T. had an exclusive contract with
non-party Bosch to design and manufacture connectors. *J.S.T,* 965 F.3d at 573. Bosch, in turn,
used those connectors in engine components it sold to General Motors. *Id.* J.S.T. alleged that
Bosch gave J.S.T.'s proprietary drawings to J.S.T.'s competitors who copied them and
eventually displaced J.S.T. as Bosch's sole supplier of the connectors. *Id.* J.S.T. sued the
competitors, but not Bosch, in federal court in Illinois. *Id.*

The Seventh Circuit held that there was no personal jurisdiction in Illinois because "[t]he
competitors' only link to Illinois is that they sell their connectors to Bosch, knowing that the
connectors will end up in General Motors cars and parts that are sold in Illinois." *Id.* at 573–74,
575–78. The Seventh Circuit expressly declined to perform a stream of commerce analysis. *See
id.* The minimum contacts analysis instead focused on the connections between Illinois and the
place where the defendants were alleged to have been unjustly enriched. *See id.* at 578. "If the
defendants had made money in Illinois from J.S.T.'s drawings, then we might be able to
conclude that J.S.T.'s unjust enrichment claim arose from those downstream sales. But . . . [t]he
enriching sales were the defendants' sales to Bosch, which took place at Bosch's locations in
China and Texas." *Id.* Courts in this district have employed similar reasoning to reject personal

---

[3] The Seventh Circuit decided *J.S.T.* on July 13, 2020, while briefing on Phunware's motion to dismiss was ongoing.
*See* Reply, ECF No. 70 (November 2, 2020).

jurisdiction over unjust enrichment claims. *See, e.g., Weston v. Big Sky Conf.*, 466 F. Supp. 3d 896, 906 (N.D. Ill. 2020); *Richardson v. Se. Conf.*, 2020 WL 1515730, at *7 (N.D. Ill. Mar. 30, 2020).

As *J.S.T.* teaches, the court must identify where the unjust enrichment occurred when performing the minimum contacts analysis rather than focus on where downstream effects were felt. Sha-Poppin alleges that Phunware was unjustly enriched when Chase approved its PPP loan application. *See* Am. Compl. ¶ 121. There is no allegation that the approval had any connection to Illinois. *See id.* The connection between Phunware's conduct and the harm felt by Sha-Poppin in Illinois "is thus too attenuated" to support specific jurisdiction. *J.S.T.*, 965 F.3d at 578.

## V. Conclusion

For these reasons, Phunware's motion to dismiss is granted insofar as it seeks dismissal of count VI of the amended complaint for lack of personal jurisdiction.

Dated: March 5, 2021

_____/s/_____
Joan B. Gottschall
United States District Judge